UNICORN, The (MORRISON v.). See Case No. 9,849.

UNION, The. See Case No. 10,297.

## Case No. 14,344.

### The UNION.

### The SUPERIOR.

[7 Ben. 296.] [1]

District Court, S. D. New York. May, 1874.

COLLISION IN EAST RIVER—STEAMBOATS CROSSING —LIGHTS—SPEED—BURDEN OF PROOF.

1. The ferry-boat S. was coming down the East river on an ebb tide, at the rate of twelve miles an hour, at night. She discovered, off her port bow, the tug U., which was crossing the river from Brooklyn to New York, and her pilot, blowing one whistle, ported her helm. The U. blew two whistles and starboarded, and the vessels came in collision. The U. had no green or red lights set. She had a feeble light

---

[1] [Reported by Robert D. Benedict, Esq., and B. Lincoln Benedict, Esq., and here reprinted by permission.]

set on a pole aft, and she had in a box in her kitchen window, under her pilot-house, a white light. Held, that the U. was in fault in not having set the lights required by the 47th section of the act of February 28, 1871 (16 Stat. 454).

2. The burden, therefore, was on her to show that this fault could not have contributed to the collision, and that she had not shown this.

3. The U. was also in fault in not having sooner stopped and backed.

4. The S. was in fault in going at too great a speed, after dark, in a crowded part of the harbor.

In admiralty.

W. R. Beebe, for the Superior.

D. McMahon, for the Union.

BLATCHFORD, District Judge. These are cross-libels growing out of a collision which took place in the East river, on the evening of the 12th of October, 1872, between the steam ferry-boat Superior and the steamtug Union. The Superior was on a trip from her slip at South Seventh street, Brooklyn, to her slip at Roosevelt street, New York. The Union was on her way from the Atlantic Basin, in Brooklyn, to a slip in New York at the foot of Market street, East river, to lay up for the night.

The libel in the suit brought by the owner of the Superior against the Union, was sworn to by E. D. Chappell, the superintendent of the company owning the Superior, on the 29th of October, 1872, and was filed the next day. It alleges, that the Superior left her slip at 6:50 p. m., having all her regulation lights set and brightly burning, and having a competent and skillful pilot at the wheel, and a competent lookout forward, both of whom were carefully attending to their respective duties; that, at the time, the tide was running strong ebb; that, when about abreast the foot of Market street, and about one-third of the way from the New York shore towards the Brooklyn shore, two whistles were heard by those on the Superior, and a tug, which turned out to be the Union, was discovered, without any lights set, off the port bow of the Superior; that the pilot of the Superior saw, at a glance, that, in the then state of the tide, any attempt on his part to cross the bows of the tug would result in the Superior's striking the tug about amidships and sinking her, and probably drowning or otherwise injuring all those on board (the tug having, without waiting for an answering signal, starboarded, so as to change her course more on to the Superior), and the pilot of the Superior at once blew a single whistle, and forthwith put his wheel hard a-port, and stopped and backed, so as to throw her head to the northward and westward, and across the tide, and thus more rapidly deaden her headway; that the tug, instead of porting and changing, kept her starboard wheel, and kept on, striking the Superior on her port bow, and then, ranging ahead, struck and carried away the forward rudder of the Superior, and also broke her

stern-post and otherwise damaged her; that the collision occurred through the negligence of those navigating the tug, in running, after dark, without the proper lights being set and burning, in giving two whistles, when on the port side of the Superior, and attempting to pass to the left, in changing her course without waiting for an answering signal, in not answering the single whistle, when she received it, in not porting when she received it, and in not stopping and backing; and that, the courses of the boats being crossing, and the tug having the Superior on her starboard hand, the tug was bound, by the act of congress, to take the necessary measures in time to avoid the Superior. The claim is $286.61 for repairs and $200 for four days' demurrage.

The answer of the Union avers, that the night was clear moonlight, the moon being nearly full; that objects could be descried at a great distance; that there was no wind; that the tide was strongly ebb, running from three to four knots per hour; that the Union, on her trip, proceeded out into and along the middle of the river, eastward, toward her destination; that, when she was about the middle of the river, at a distance half way between the Fulton ferry slips, those in charge of her first noticed the Superior coming down the river at the rate of 12 or 15 knots an hour, somewhat on the Brooklyn side or shore therof, above Catharine street ferry, and about one-third of the way across from the Brooklyn side, and between 800 and 900 yards off; that the Union was then heading northerly, for her berth at Market street; that the pilot of the Union, on so observing the Superior, blew his steam-whistle twice, as a signal to the Superior that each vessel should starboard her helm and pass to the left; that the pilot of the Superior answered, by blowing his whistle twice, meaning thereby to assent to such courses; that, immediately thereupon, the Superior, instead of starboarding, changed her course, heaving her helm a-port and sheering towards and on the Union; that the pilot of the Union again blew his whistle twice, as a further signal to the Superior to go to the left; that the Superior again responded by two whistles, but those in charge of her did not change her course after taking said sheer on her port helm, but continued such course, after sheering, until she struck the Union, which she did about abreast of her engine, between her engine and boiler, about two-thirds of the way aft on the starboard side of the Union; that, at the time of the collision, the Union was only about 150 feet from the end of pier No. 36, East river, and the Superior was entirely and unnecessarily out of her usual ferry track; that the pilot of the Union, finding the Superior coming directly for him, kept his wheel hard a-starboard, so as to avoid the blow; that those in charge of the Superior made no effort to stop their vessel; that, if they had starboarded in time, or kept their course, when first signalled

by the Union, no collision would have occurred; that the Union had a competent and skilful pilot at her wheel, and a competent lookout forward, and all the lights required by law for her to carry, set and burning brightly; and that the collision occurred through the negligence of those navigating the Superior, in these respects: 1. The pilot of the Superior did not take the course indicated by her whistles. 2. He did not keep his course, while, if he had done so, there would have been no collision, as the Superior would have passed 300 feet off from the Union. 3. The Superior did not starboard her helm or stop, and the Union could not stop, as the Superior would then have struck her in the boiler and sunk her. 4. The Superior was proceeding at a dangerous and unlawful rate of speed for that vicinity, and in the then state of the tide, while the Union was going at a much less rate of speed than the law and prudence allowed her to go. 5. That the Superior was out of her usual ferry route, and not in the course pointed out by law.

The libel by the owners of the Union against the Superior claims damages to the amount of $3,100. Its averments are the same as those of the answer to the libel of the Superior. The statement, in the answer of the Superior to the libel of the Union, of the circumstances of the collision, is the same as that given in the libel of the Superior.

I have arrived at the conclusion, in this case, that both vessels were in fault, and that the damages must be divided. The evidence is very voluminous, and there is much conflict of testimony on various points, but none of those which I regard as controlling to determine the faults of the respective vessels.

The Union was in fault in respect to her lights. The statute in force in regard to the lights she was bound to carry and exhibit, at the time of this collision, was the 47th section of the act of February 28, 1871 (16 Stat. 454), which provides as follows: "Every coasting steamer, and every steamer navigating bays, lakes or other inland waters, other than ferry-boats and those above provided for, shall carry the red and green lights as provided for ocean-going steamers, and, in addition thereto, a central range of two white lights, the after light being carried at an elevation of at least fifteen feet above the light at the head of the vessel, the head-light to be so constructed as to show a good light through twenty points of the compass, namely, from right ahead to two points abaft the beam on either side of the vessel, and the after light to show all around the horizon." The Union had no red light and no green light. She had a light hoisted on a pole aft, but, on the evidence, it must have been a feeble one. She had in a box in the kitchen window, under her pilot-house, a white light. This was intended for a head-light, but it was not "at the head of the vessel." It was a long distance back from the head of the vessel, and it was

so arranged, that, instead of showing as far back as abeam and two points abaft thereof, on either side, the wooden sides of the box prevented its being seen as far back as abeam. How much it was cut off from being seen forward of abeam, cannot be told. Now, in the way in which the Union was approaching the Superior, it was very important for the Union to show a green light on her starboard side, and a white light at her head. She had no green light, and it is extremely probable her white light in the kitchen window was cut off to the view of the Superior. The absence of these lights was a fault in the Union. It is for the Union to show not merely that such fault might not have been a cause contributing to the collision, or that it probably was not, but that it could not have been. The Union has not shown this. I also regard the Union as in fault in not having stopped and backed as soon as she should have done so.

I find the Superior to have been in fault in going at too great a rate of speed, with the tide, after dark, in a crowded part of the harbor.

There must be a reference to ascertain the damages, and an apportionment.